## IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF ALABAMA SOUTHERN DIVISION

| | | |
|---|---|---|
| **BEVERLY JO JONES** | : | |
| **Plaintiff,** | : | |
| **vs.** | : | **CIVIL ACTION: 14-0059-WS-C** |
| **STATE OF ALABAMA,** *et al.,* | : | |
| **Defendants.** | : | |

### REPORT AND RECOMMENDATION

Plaintiff Beverly Jo Jones, proceeding *pro se* and *in forma pauperis*, filed a complaint under 42 U.S.C. § 1983.  This action was referred to the undersigned for appropriate action pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4).  It is recommended that this action be dismissed without prejudice, prior to service of process, pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) as the Court lacks jurisdiction over the claim under the *Rooker-Feldman* doctrine.

### I.      Background and Complaint Allegations.

Plaintiff Jones is currently under a state order to avoid contact with attorney J. Jerry Pilgrim after being convicted of stalking Mr. Pilgrim in 2003.  Attorney Pilgrim previously represented Ms. Jones in divorce proceedings around 1994, but withdrew as her attorney after she began to engage in a pattern of disturbing conduct.  The evidence presented at Jones' jury trial showed that:

> [Jones] would follow [Pilgrim] and his current wife as they jogged to the YMCA. . . . [S]he drove out of the parking lot across the street from the YMCA, hitting the middle of his wife's car. . . . [Jones] sent him items such as "feathers, dirt, grass, and worms in a Tupperware bowl." . . . [She] . . . would leave "paraphernalia and letters" next to [Pilgrim's assigned parking spot]. . . . [She] filed six lawsuits against him in court; including a

suit in federal court in which the pleading "didn't make sense"; a suit in Mobile District Court; a suit in Baldwin County seeking to have his marriage license annulled; and a small claims case claiming that the victim had stolen the last verse of her song written about Judge Roy Moore. After being ordered by the court not to have any contact with [Pilgrim], [Jones] continued to write him, stating that "Rule 33 . . . does not seem too bad of a rule to break," and "I feared I best just go ahead and use my get-into-jail-free statement.". . . [Jones] was committed to Searcy State Mental Hospital in 1995 or 1996, and discontinued writing letters to [Pilgrim] once she was placed on medication. When she left Searcy, however, she was no longer on medication and began to again write letters. . . . [S]he appeared in a courtroom in which [attorney Pilgrim] was trying a case, he had to be escorted to his office by two security employees to avoid what the building manager describes as a "potential disastrous conflict." [Pilgrim] testified that the appellant's conduct had a considerable effect of his well-being, and that he feared for his safety and that of his family.

*Jones v. Albright*, CA 09-0600-WS-C, 2010 U.S. Dist. LEXIS 47260, *3-5 (S.D. Ala. April 15, 2010).[1]  Jones was sentenced on January 23, 2004, to seven years imprisonment; she was ordered to serve eighteen (18) months in a jail-like facility with the remainder of the sentence suspended pending her successful completion of five years probation, and it was ordered that she have no contact with Pilgrim, his family, or his law office.  *Id*. at *1-2.  It is from this no contact order that the current action arises.

Jones filed numerous unsuccessful post-trial petitions and appeals in the state courts following her conviction.  *Id*. at *2-13.  Her stalking conviction and sentence became final by issuance of a certificate of judgment by the Alabama

---

[1]     At its discretion, the Court may take judicial notice of documents filed in other judicial proceedings, because they are public documents.   *Young v. City of Augusta, Ga.*, 59 F.3d 1160, 1166 n.11 (11th Cir. 1995); *In re Delta Resources, Inc.*, 54 F.3d 722, 725 (11th Cir. 1995); *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994). Also, the record in previous cases may be considered to clarify the meaning of the court orders. *Wagner v. Daewoo Heavy Indus. Am. Corp.*, 289 F.3d 1268, 1274 n.7 (11th Cir.), *vacated on different grounds*, 298 F.3d 1228, 314 F.3d 541 (11th Cir. 2002). *See generally Schafler v. Indian Spring Maintenance Ass'n.*, 139 F. App'x 147, 149 (11th Cir. 2005) (court took judicial notice of orders issued in previous lawsuits finding requirements of *res judicata* met and dismissing complaint). Accordingly, the Court takes judicial notice of Plaintiff Jones' previous case number 09-600-WS-C before this Court.

Court of Criminal Appeals on January 26, 2005. [2] *Id.* at 23.  On April 2, 2008, she

filed a pleading, titled "Motion to Set Aside "No-Contact" Order of Court" in the

Circuit Court of Mobile County, Alabama, seeking to have the no-contact order

modified arguing that since her release from prison she "avoided all places that

could possibly cause her to come into contact with these who the court ordered

to avoid . . . ."    (Mobile County Circuit Court Case No: CC-02-1927; Docket

entry dated April 3, 2008).  This motion was denied on April 16, 2008.  (*See id.*).

On February 10, 2009, the trial court determined Jones had violated the

conditions of her probation by violating the no-contact order, and following a

commitment hearing, she was ordered to serve the remainder of her sentence.

*Jones v. Albright*, CA 09-0600-WS-C, 2010 U.S. Dist. LEXIS 47260, *13-14 (S.D. Ala.

April 15, 2010).  Following her probation violation, Jones filed a writ of habeas

corpus and motions for rehearings in the state courts, but all were unsuccessful.

*Id.* at *14-15.  Additionally, Jones filed numerous petitions, complaints, and

---

[2]     *Cf. Brown v. Hooks*, 176 F. App'x 949, 951 (11th Cir. 2006) ("On March 23, 2001, the
Alabama Court of Criminal Appeals affirmed his conviction. Brown did not petition for
*certiorari* review in the Alabama Supreme Court, and his conviction became final on
April 10, 2001, when the Certificate of Judgment issued."); *see Bridges v. Johnson*, 284 F.3d
1201, 1202 (11th Cir. 2002) ("Bridges pled guilty to terroristic threats, aggravated assault
and stalking charges, and was sentenced to 26 years' imprisonment on November 12,
1996. He did not appeal his convictions and sentences, but he did request that his
sentence be reviewed by a sentence review panel, pursuant to O.C.G.A. § 17-10-6. . . . As
provided in 28 U.S.C. § 2244(d)(1)(A), his judgment became final on the date that the
time for seeking direct review expired; this date was not affected by his application for
sentence review, because an application for sentence review is not a part of the direct
appeal process under Georgia law. . . . Accordingly, Bridges' judgment of conviction
became final on December 21, 1996, the date on which his 30-day right to appeal the
November 21, 1996 judgment expired."); *Tinker v. Moore*, 255 F.3d 1331, 1332 & 1333
(11th Cir. 2001) ("Tinker was convicted on the robbery charge, and on January 29, 1997,
the Third District Court of Appeal affirmed his conviction. . . . The mandate issued on
February 14, 1997. . . . Under Florida law, a judgment against a criminal defendant
becomes final upon issuance of the mandate on his direct appeal. . . . Tinker's mandate
issued on February 14, 1997, and thus he had until February 13, 1998, to file his § 2254
petition, absent tolling of the limitations period."), *cert. denied*, 534 U.S. 1144, 122 S. Ct.
1101, 151 L. Ed. 2d 997 (2002).

motions in federal court following her stalking conviction and probation violation which were found to be frivolous and a strain on judicial resources to the extent that she was sanctioned.  On January 31, 2007, United States District Judge Charles R. Butler, Jr., issued an ordered prohibiting Plaintiff Jones "from filing any new actions without prior review and approval by the Court."  (S.D. Ala. Case no.: 09-mc-1002, Doc. 1).

The current action before the Court was filed by Plaintiff Jones on December 14, 2013.  (S.D. Ala Case No.: 09-mc-1002, Doc. 12-1).  The complaint alleges that the no-contact order entered by the State of Alabama, through the Mobile County Circuit Court, violates her First Amendment rights because "[t]he order to never contact Pilgrim is impossible to keep, unjust, unreasonable and disrupts this federal court from making any progress for the interests of either party…."  (Doc. 1 at 2).  Upon review of the complaint, Chief Judge William H. Steele determined that: 1) "A no-contact order implicates First Amendment rights and can, under some circumstances, violate an individual's constitutional right to association," 2) Such a claim falls within the federal courts' jurisdiction, 3) The "*Rooker-Feldman doctrine*" would bar such a federal claim if, "Ms. Jones had a reasonable opportunity to raise [her] federal claims in the state court proceedings."  (Doc. 1-1 at 1-2) (internal quotation marks and citation omitted).  "The Court [was] unable to conclude from the document itself [whether or not] its jurisdiction [was] barred by *Rooker-Feldman* or any other principle," and accepted the petition for docketing as a new civil rights action on February 13, 2014.[3]  (*Id*. at 2).

---

[3]      Jones' initial complaint named the State of Alabama as the sole respondent/defendant.  The Court noted upon review that while the state is generally

4

After being granted leave to proceed with her action *in forma pauperis*, Jones filed an amended complaint on March 7, 2014, naming Alabama Governor Robert J. Bentley and Attorney General for the State of Alabama, Luther Strange, as defendants and seeking injunctive relief from the Court from the state issued "no-contact" order.  (Doc. 6 at 3).  Subsequently, Plaintiff Jones filed her second and final amended complaint on August 12, 2014, seeking removal of the no contact order and alleging:

> The respondents uphold a "no contact" order because Jones' contracted attorney, J. Jerry Pilgrim, filed Probate Court and Criminal Circuit Court actions against Plaintiff to secure "no contact" orders that fail to consider Jones' files that Pilgrim keeps of hers. [citing the work-product discovery doctrine and *Hickman v. Taylor* 329 U.S. 495 (1947).]
>
> The respondents represent the *State of Alabama* that wrongfully obtained Jones' Gadsden home place which J. Jerry Pilgrim was contracted to protect: inasmuch, Jones is under obligation to inform him about Jones' estranged step-relatives the hospitalization of her only blood brother in Texas, the hospital in Denton, TX and it[s] unlawful practice in the HIPPA pass code laws.
>
> The State of Alabama per criminal court actions in 2003 and 2009 in violation 42 [U.S.C.] § 1983 malicious prosecution did (1) prosecute for a criminal offense; (2) instigate without probable cause; (3) with malice; (4) under a valid warrant, accusation or summons; (5) which has terminated favorably to the respondents and (6) has damaged the petitioner.

(Doc. 8 at 2-3) (emphasis omitted).  Because Plaintiff is proceeding *in forma pauperis*, the Court is reviewing her amended complaint (Doc. 8) under 28 U.S.C. § 1915(e)(2)(B).

II.   **Standards of Review Under 28 U.S.C. § 1915(e)(2)(B).**

---

protected by sovereign immunity under the Eleventh Amendment, Jones may obtain the injunctive relief sought from the state by suing an appropriate state official rather than the state itself.  (Doc. 1-1 at 1).

Under § 1915(e)(2)(B)(i), a claim may be dismissed as "frivolous where it lacks an arguable basis in law or fact." *Neitzke v. Williams*, 490 U.S. 319, 325, 109 S. Ct. 1827, 1831-32, 104 L.Ed.2d 338 (1989).[4]   A claim is frivolous as a matter of law where, *inter alia*, the defendants are immune from suit, *id.* at 327, 109 S. Ct. at 1833, or the claim seeks to enforce a right that clearly does not exist. *Id.*

Moreover, a complaint may be dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted. *Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir. 1997).  To avoid dismissal for failure to state a claim upon which relief can be granted, the allegations must show plausibility.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557, 127 S. Ct. 1955, 1966, 167 L.Ed.2d 929 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L.Ed.2d 868 (2009).  That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level" and must be a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'"  *Twombly*, 550 U.S. at 555, 557, 127 S. Ct. at 1965, 1966 (second brackets in original).  But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678, 129 S.Ct. at 1949.  Furthermore, when a successful affirmative defense, such as a statute of limitations, appears on the face of a complaint, dismissal for

---

[4]      The frivolity and the failure-to-state-a-claim analysis contained in *Neitzke v. Williams* was unaltered when Congress enacted 28 U.S.C. § 1915(e)(2)(B) in 1996.  *Bilal v. Driver*, 251 F.3d 1346, 1349 (11th Cir.), *cert. denied*, 534 U.S. 1044 (2001).  However, dismissal is now mandatory under § 1915(e)(2)(B).  *Id.* at 1348-49.

failure to state a claim is also warranted.  *Jones v. Bock,* 549 U.S. 199, 215, 127 S.Ct. 910, 920-21, 166 L.Ed.2d 798 (2007).

When considering a *pro se* litigant's allegations, a court gives them a liberal construction holding them to a more lenient standard than those of an attorney.  *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595-596, 30 L.Ed.2d 652 (1972).  The court, however, does not have "license . . . to rewrite an otherwise deficient pleading [by a *pro se* litigant] in order to sustain an action."  *GJR Investments v. County of Escambia, Fla.,* 132 F.3d 1359, 1369 (11th Cir. 1998), *overruled on other grounds by Randall v. Scott,* 610 F.3d 701, 710 (11th Cir. 2010) (relying on *Iqbal,* 556 U.S. 662, 129 S. Ct. 1937).  Furthermore, the court treats as true factual allegations, but it does not treat as true conclusory assertions or a recitation of a cause of action's elements.  *Iqbal,* 566 U.S. at 681, 129 S. Ct. at 1951. In addition, a *pro se* litigant "is subject to the relevant law and rules of court including the Federal Rules of Civil Procedure."  *Moon v. Newsome,* 863 F.2d 835, 837 (11th Cir.), *cert. denied,* 493 U.S. 863 (1989).

### III.    Analysis.

#### a.    *Rooker-Feldman* doctrine bars review of complaint.

Subject matter jurisdiction of the federal courts is exclusively conferred and defined by the constitution and by statute.  *Morrison v. Allstate Indem. Co.,* 228 F. 3d 1255, 1261 (11th Cir. 2000).  It cannot be created by the parties' consent nor supplanted by considerations of convenience or efficiency.  *Id*.  Subject matter jurisdiction is a threshold inquiry that the Court is required to consider before addressing the merits of any claim.  *See Fitzgerald v. Seaboard Sys. R.R., Inc.,* 760 F.2d 1249, 1251 (11th Cir. 1985) ("A federal court not only has the power but also the obligation at any time to inquire into jurisdiction whenever the

possibility that jurisdiction does not exist arises.").  As a result, federal courts must inquire *sua sponte* into jurisdiction whenever it appears to be lacking. *Morrison*, 228 F. 3d at 1261.

The *Rooker-Feldman* doctrine provides that federal courts, other than the United States Supreme Court, do not have jurisdiction to review the final judgments of state courts. *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16, 44 S. Ct. 149, 150, 68 L. Ed. 362 (1923); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 476-82, 103 S. Ct. 1303, 1311-15, 75 L. Ed. 2d 206 (1983); *see also, Brown v. R.J. Reynolds Tobacco Co.*, 611 F.3d 1324, 1330 (11th Cir. 2010) ("[L]ower federal courts [are barred] from exercising jurisdiction over cases brought by state-court losers challenging state-court judgments rendered before the district court proceedings commenced.") (citations and internal quotation marks omitted); *Lozman v. City of Riviera Beach, Fla.*, 713 F.3d 1066, 1072 (11th Cir. 2013) ("The *Rooker-Feldman* doctrine states that federal district courts have no authority to review final judgments of a state court.") (citations omitted); *Nicholson v. Shafe*, 558 F.3d 1266, 1270 (11th Cir. 2009) ("Generally speaking, the *Rooker-Feldman* doctrine bars federal district courts from reviewing state court decisions.").  "[A]ppellate authority over final state-court decisions rests with the Supreme Court of the United States." *Carter v. Killingsworth*, 540 F. App'x 912, 914 (11th Cir. Sept. 6, 2013).  The *Rooker-Feldman* doctrine is a narrow preclusion doctrine that bars a state court loser from later enlisting a federal district court to reverse his state court loss. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284, 125 S. Ct. 1517, 1521—22, 161 L. Ed. 2d 454 (2005).

> The Supreme Court has limited *Rooker-Feldman* to those cases in which (1) the plaintiff was the loser in state court, (2) the plaintiff is complaining of an injury caused by the state court's judgment, (3)

> the state court's judgment was "rendered before the district court
> proceedings commenced," and (4) the plaintiff is "inviting district
> court review and rejection" of the state court's judgment. *Exxon
> Mobil*, 544 U.S. at 284, 125 S. Ct. at 1521—22.  Further, the doctrine
> applies only to claims that were actually brought in state court or
> claims that are "inextricably intertwined" with the state court
> judgment.  *Casale v. Tillman*, 558 F.3d 1258, 1260 (11th Cir. 2009)
> (quotation marks omitted).  A claim is "inextricably
> intertwined" with the state court judgment "if it would effectively
> nullify the state court judgment, or it succeeds only to the extent
> that the state court wrongly decided the issues." *Id*. (citations and
> quotation marks omitted).

*Scott v. Frankel*, No. 14-14262, 2015 U.S. App. LEXIS 5419, *4-5 (11th Cir. 2015).

Plaintiff's claim falls directly within this narrow doctrine.  Jones lost in a state court decision in 2003, when convicted of stalking, and again in 2009, for probation violation for violating the court's no contact order.  She is complaining of injury caused by the state issued no contact order, which was birthed from the stalking conviction.  This action was filed approximately nine years after her state court conviction and sentence were final.  Thus, the no contact order subject to this complaint qualifies as a state court judgment for the purposes of *Rooker-Feldman, see Homola v. McNamara*, 59 F.3d 647, 649-50 (7th Cir. 1995) (concluding that *Rooker-Feldman* barred challenge to state-court contempt order that led to plaintiff's arrest); *Casale v. Tillman*, 558 F.3d 1258, 1261 (11th Cir. 2009) (concluding that *Rooker-Feldman* barred challenge to state-court contempt orders in divorce proceeding); *see also Garry v. Geils*, 82 F.3d 1362, 1367 n.10 (explaining that *Rooker-Feldman* applies when "the federal plaintiff is actually suing the state court or state court judges"), and is discernibly "inextricably intertwined" with the state court's stalking judgment.

> *Rooker-Feldman* applies equally to claims that are actually raised in a
> state court and to those that are "inextricably intertwined" with a
> state court's judgment. D.C. Court of Appeals v. Feldman, 460 U.S.

462, 482 n.16, 103 S. Ct. 1303, 75 L. Ed. 2d 206 (1983). A claim is inextricably intertwined if a plaintiff's federal case is predicated on finding that a state court ruling was wrong. *See, e.g., Goodman v. Sipos*, 259 F.3d 1327, 1332 (11th Cir. 2001) (explaining that a claim is "inextricably intertwined" with a state court judgment if it succeeds only to the extent the state court wrongly decided the issue before it); *Powell v. Powell*, 80 F.3d 464, 466-67 (11th Cir. 1996) (explaining that a claim was "inextricably intertwined" with a state court award because a finding in plaintiff's favor would "effectively nullify" a state court's judgment); *GASH Associates v. Village of Rosemont*, 995 F.2d 726, 728 (7th Cir. 1993) (explaining that "inextricably intertwined" determination hinges on whether a federal claim alleges that injury was caused by a state court judgment instead of an independent out-of court event).

*Casale v. Tillman*, No. 1:07-cv-774-WKW[wo], 2008 U.S. Dist. LEXIS 54226, *6-9 (M.D. Ala. July 15, 2008).

The crux of Jones' complaint is that the state court ruled wrongly in entering a no contact order following her stalking conviction. While the doctrine would be inapplicable if Plaintiff had had no reasonable opportunity to raise her constitutional claim in the state court proceedings, this is far from the truth. The record is void of any assertion that Jones lacked opportunity to raise these claims previously. Indeed, the history of Jones' case evolving from the no contact order reveals ample opportunity for Jones to have raised any federal claim she desired during the lifespan of this case.[5] Beyond the extensive post trial filings and

---

[5]      In a previous case with Plaintiff, this Court reviewed in detail the post trial and appellate filings of Jones: Jones' motion for judgment of acquittal or, in the alternative, for judgment notwithstanding the verdict, as well as her motion for new trial, were denied on February 2, 2004; on October 29, 2004, the Alabama Court of Criminal Appeals affirmed her conviction and sentence; on January 7, 2005 and January 23, 2005, the Alabama Court of Criminal Appeals overruled Jones' applications for rehearing; the Alabama Supreme Court struck two petitions for writ of certiorari for failure to comply with Ala. R. App. P. 39; Jones' petition for writ of habeas corpus was denied on March 6, 2009 by the Alabama Court of Criminal Appeals; on March 13, 2009 her application for rehearing was overruled; the Alabama Supreme Court denied a "three-headed petition on July 29, 2009 and an application for rehearing on August 26, 2009. *Jones v. Albright*, CA 09-0600-WS-C, 2010 U.S. Dist. LEXIS 47260, *2, 12-17 (S.D. Ala. April 15, 2010)

appeals, at Jones' criminal trial, notably, she testified that the no contact order was a violation of her constitutional rights and that she could petition the courts regarding the issue, "but she didn't have time for that."[6]  Then in 2008, prior to her violation of the no contact order, Jones sought to have the order set aside, but the motion was denied.  (*See* Mobile County Circuit Court Case No: CC-02-1927; Docket entry dated April 3, 2008).  These facts further substantiate the Court's reasoning that Jones had multiple opportunities to raise her First Amendment Claim in a state court proceeding.

For her federal claim to proceed now, the Court would have to essentially review and reverse the Alabama court – exactly what the *Rooker-Feldman* doctrine prohibits.  Jones' complaint is effectively a state court appeal and must be dismissed for lack of subject matter jurisdiction.  *Powell*, 80 F.3d at 466-67; *Liedel v. Juvenile Court of Madison Cnty., Ala.*, 891 F.2d 1542, 1545 (11th Cir. 1990); *Staley v. Ledbetter*, 837 F.2d 1016, 1017-18 (11th Cir. 1988).  The Court's determination that it lacks subject matter jurisdiction based on the *Rooker-Feldman* doctrine is supported by Eleventh Circuit cases ruling federal courts must abstain from

---

[6]     Jones' initial petition to the Alabama Court of Criminal Appeals, submitted by her appellate counsel, provides a summary of the trial testimony, including that of Ms. Jones.  The brief states that:

> Jones testified in regard to the March 14th incident and the letters she wrote afterward [to Pilgrim]. (R-231-241) . . . She testified about violating the District Court no contact order, stating, ". . . I looked at the laws before I did it to make sure that what I was doing was not anything but respecting the Court.  The Court cannot take away humans' right to speak without at least letting the Court know it can't do this.  So I didn't do anything detrimental.   I gave Mr. Pilgrim documents that had accumulated relative to the human rights violations.  I sent him . . . everything I did in those days was needed.  I needed to communicate to him." (R-245) . . . Jones testified that the court order was a violation of constitutional rights.  That she had the choice of going to federal court but she didn't have time for that. (R-249-250)

(S.D. Ala. Case No: 09-cv-0600-WS-C, Doc. 23-3 at 43-44).

adjudicating claims such as Jones', where the order at issue originates entirely from the rendering of a state court judgment.

In *Casale v. Tillman*, 558 F.3d 1258, 1261 (11th Cir. 2009) the plaintiff was required by divorce decree to pay half of his military retirement pay to his ex-wife.  The decree further stated that the plaintiff was to pay the same amount to the ex-wife he entered the civilian workforce, but it was silent as to what would happen to the payments if the plaintiff reentered the military.  Subsequent to the divorce, the husband reentered the military and ceased payments to his ex-wife when his retirement payments stopped.  The ex-wife obtained contempt orders from the state court and attempted to domesticate the judgments in the plaintiff's new home state.  The plaintiff argued the orders violated federal law, the Uniformed Services Former Spouses' Protection Act, and sought to enjoin his ex-wife from enforcing an aspect of the state-court judgment.  The district court determined and the Eleventh Circuit affirmed, *inter alia*, that the *Rooker-Feldman* doctrine barred the district court from reviewing plaintiff's claims because his federal claim was inextricably intertwined with the divorce decree, and he should have argued his federal claim on direct appeal from the state's divorce decree.  *Id.* at 1261.

*In Figueroa v. Merscorp, Inc.,* 477 F. App'x 558, 560-561 (11th Cir. Fla. 2012), the plaintiff held real property that was subject to a mortgage owned by the defendants.  When Figueroa defaulted on his mortgage, a foreclosure action was filed in state court, and Figueroa failed to respond to the complaint.  Thereafter, the state court granted the defendants' motion for summary judgment and entered a judgment of foreclosure.  Figueroa then filed several motions to vacate the judgment and filed an action asserting federal claims against the defendants;

primarily he argued but for the defendants' fraudulent mortgage scheme his property would not have been foreclosed on and he would not have been injured by losing his property interest.  The Eleventh Circuit in an unpublished opinion concluded that *Rooker-Feldman* barred the district court's review of his claims since Figueroa was a state court loser in the foreclosure proceeding and that "[t]he state court judgment formed the basis of or was intertwined with the injury complained of in Figueroa's instate complaint . . . . Figueroa also sought, in effect, to have the district court 'review and reject' the state court proceedings because his federal RICO claims could only succeed if the state court's foreclosure judgment was in error."  *Id.* at 560-561.  See also, *Spraggins v Walton Cnty.* No. 3:12cv12/RS/CJK, 2012 U.S. Dist. LEXIS 38094, *9-10 (N.D. Fla. March 2, 2012) (Under *Rooker-Feldman* doctrine, Plaintiff's claims arising from the allegedly unconstitutional taking of land in state court proceeding was dismissed for lack of jurisdiction.)

In *Cormier v. Horkan*, 397 F. App'x. 550 (11th Cir. 2010), the Eleventh Circuit held the district court lacked subject matter jurisdiction of the plaintiff's claims pursuant to *Rooker-Feldman*.  The plaintiff's action arose from a divorce decree awarding Cormier's ex-wife with alimony.  Mr. Cormier alleged various constitutional and statutory violations related to the divorce proceedings and the court's alimony order.  The Appellate Court determined that Cormier was "a state-court loser who [was] complaining of injuries caused by state-court judgments," and his complaint was "barred by the *Rooker-Feldman* doctrine because his constitutional and statutory challenges [were] essentially an effort to block enforcement of the state court's alimony order.  Success on his federal claims would 'effectively nullify" the state court judgment; thus his claims [were]

inextricably intertwined with the divorce action, and Cormier should have pursued all of his claims on direct appeal." *Id*. at 552-553.

The no contact order at issue in this action is "inextricably intertwined" with the state court judgment as the nullification of the order "would effectively nullify the state court judgment," *Casale v. Tillman*, 558 F.3d 1258, 1260 (11th Cir. 2009) (citations and quotation marks omitted), and case law indicates that "[t]he *Rooker-Feldman* doctrine is broad enough to bar all federal claims which were, or should have been, central to the state court decision, even if those claims seek a form of relief that might not have been available from the state court." *Goodman v. Sipos*, 259 F.3d 1327, 1333 (11th Cir. 2001). Thus the Court lacks jurisdiction over Jones' action and is barred from reviewing her claim(s).

> b.    Application of Sovereign Immunity.

In addition to dismissal of the complaint for lack of subject matter jurisdiction, the named defendants, the State of Alabama and Governor Bentley, are immune from suit.

In order to state a claim under 42 U.S.C. § 1983, a plaintiff must establish: "(1) . . . the conduct complained of was committed by a person acting under color of state law; and (2) . . . this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S. Ct. 1908, 1913, 68 L.Ed.2d 420 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327, 330-31, 106 S. Ct. 662, 664, 88 L. Ed. 2d 662 (1986). Additionally, a plaintiff must causally connect a defendant's actions, omissions, customs, or policies to a deprivation of his constitutional or federal rights in order to state a claim under § 1983. *See Zatler v. Wainwright*, 802

F.2d 397, 401 (11th Cir. 1986); *Williams v. Bennett*, 689 F.2d 1370, 1380 (11th Cir.

1982), cert. denied, 464 U.S. 932, 104 S. Ct. 335, 78 L. Ed. 2d 305 (1983).  The State

and its officials acting in their official capacities are not "persons" for § 1983

purposes.  *Carr v. City of Florence*, 916 F.2d 1521, 1525 n.3 (11th Cir. 1990) (citing

*Will v. Michigan Dept. of State Police*, 491 U.S. 58, 109 S. Ct. 2304, 105 L. Ed. 2d 45

(1989)).

Additionally, the Eleventh Amendment states that "[t]he Judicial power of

the United States shall not be construed to extend to any suit in law or equity,

commenced or prosecuted against one of the United States by Citizens of another

State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI.

"While the Amendment by its terms does not bar suits against a State by its own

citizens, th[e Supreme] Court has consistently held that an unconsenting State is

immune from suits brought in federal courts by her own citizens as well as by

citizens of another State."  *Edelman v. Jordan*, 415 U.S. 651, 662-63, 94 S. Ct. 1347,

39 L. Ed. 2d 662 (1974).  "[T]he Eleventh Amendment prohibits suits against state

officials where the state is, in fact, the real party in interest."  *Summit Med. Assocs.,*

*P.C. v. Pryor*, 180 F.3d 1326, 1336 (11th Cir. 1999).  As a matter of law, the claims

against the State of Alabama are due to be dismissed pursuant to §

1915(e)(2)(B)(i).

However, state officials may be sued for prospective injunctive relief to

stop continuing violations of federal law, per the doctrine of *Ex parte Young*, 209

U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908).  *Id.*  The doctrine is a "legal fiction"

insofar as "it creates an imaginary distinction between the state and its officers,

deeming the officers to act without the state's authority, and, hence, without

immunity protection, when they enforce state laws in derogation of the Constitution." *Id.* at 1336-37.  But *Ex parte Young, supra,* requires that the joined state official "have some connection with the enforcement of the [allegedly unconstitutional] act."  209 U.S. 123, 157.  Therefore,

> unless the state officer has some responsibility to enforce the statute or provision at issue, the 'fiction' of *Ex parte Young* cannot operate. Only if a state officer has the authority to enforce an unconstitutional act in the name of the state can the Supremacy Clause be invoked to strip the officer of his official or representative character and subject him to the individual consequences of his conduct.

*Summit Med. Assocs., P.C. v. Pryor,* 180 F.3d 1326, 1341 (11th Cir. 1999) (citing *Ex parte Young,* 209 U.S. at 159-60).

An examination of cases applying these principles is helpful.  In an action involving several alleged violations of constitutional rights arising from systemic deficiencies in Georgia's criminal justice system, the Eleventh Circuit held that Georgia's governor was a proper defendant because he was, under Georgia law, "responsible for law enforcement," was "charged with executing the laws faithfully," and because he possessed authority "to commence criminal prosecutions" and to direct Georgia's attorney general "to 'institute and prosecute'" actions on the state's behalf.  *Luckey v. Harris,* 860 F.2d 1012, 1016 (11th Cir. 1988) (citing various provisions of Georgia's Constitution and Code). But in contrast, in *Women's Emergency Network v. Bush,* the Eleventh Circuit held that Florida's governor was not a proper defendant to a suit challenging the constitutionality of a state law authorizing "Choose Life" specialty license plates and providing for the distribution of fees collected from the license plate sales.

323 F.3d 937, 949-50 (11th Cir. 2003).  The governor's purported connection to the license plate program was through his responsibility over the Department of Highway Safety and Motor Vehicles, but the court found this connection "too attenuated to establish" his responsibility for the distribution of revenue generated by the specialty license plates.  *Id*. at 949.  The court explained further that "[a] governor's 'general executive power'" does not provide a sufficient connection to a state law to permit a federal court to exercise jurisdiction over him or her, particularly "[w]here the enforcement of a statute is the responsibility of parties other than the governor."  *Id*. at 949-50 (citing *Harris v. Bush*, 106 F. Supp. 2d 1272, 1276-77 (N.D. Fla. 2000)).

In *C.M. ex rel. Marshall v. Bentley*, the court granted Governor Bentley's motion to dismiss on sovereign immunity grounds after finding that his asserted connection to the enforcement of the Alabama Accountability Act of 2013, through the oversight of state education funds and budgets, was too attenuated to support his joinder as a defendant.  13 F. Supp. 3d 1188, 1205-06 (M.D. Ala. 2014).  And in *Searcy*, a similar same-sex marriage, this Court found that the plaintiffs "failed to allege, specifically, that Governor Bentley is responsible for the challenged action of enforcing or implementing the Marriage Sanctity Laws." *Searcy v. Strange*, No. CIV.A. 14-0208-CG-N, 2014 WL 4322396, at *4 (S.D. Ala. Aug. 28, 2014) (internal quotation marks and alterations omitted).

Analogously, Jones has not demonstrated in her allegations how Governor Bentley is involved in her claims.  It appears that the plaintiff is relying on the theory that, as governor of the state, Bentley is responsible for the acts or

omissions of state employees.  Such a theory is not based on Governor Bentley's personal involvement in the plaintiff's claims but is one based on vicarious liability under the theory of *respondeat superior*, which is not a cognizable cause of action under § 1983.  *Monell v. Dept. of Social Services of the City of New York*, 436 U.S. 658, 691, 98 S. Ct. 2018, 56 L.Ed.2d 611, 636 [3]  (1978); *see also Women's Emergency Network v. Bush*, 323 F.3d 937, 949 (11th Cir. 2003). ("A governor's 'general executive power' is not a basis for jurisdiction in most circumstances."). The Court, therefore, concludes that the plaintiff has failed to state a claim against Governor Bentley or the State of Alabama.

  **c.**  **The Claims within the Complaint are not Plausible.**

  In screening Plaintiff's claims, the Court finds that even if it were allowed to review her complaint, her factual content is insufficient to establish a § 1983 action.  Her factual allegations are "an unadorned the-defendant unlawfully-harmed-me accusation[,]" which is not permissible, *Iqbal*, 556 U.S. at 678, or have no bases in law.  And the underlying claims are often not even directed to a person who may have actually committed the complained of act, but instead are directed to persons in supervisory positions, and are not associated with an injury.

  After review of Jones' complaint, the Court allowed her to file this action alleging the no contact order violated her First Amendment rights with the explanation that her complaint may be barred by the *Rooker-Feldman* doctrine if she previously had the opportunity to raise this claim in state court.  Jones, however, failed to address any of the Courts' mentioned concerns as her amended complaints are void of allegations or detailed facts challenging her opportunity to plead her constitutional claims(s) before the state courts.

Additionally, the district court's extensive history with the plaintiff allows it familiarity with her underlying conviction and appellate filings to soundly declare that she had ample opportunity to previously plead her case. The evidence before the Court is obvious, that despite the Court's forewarning of the hurdles to overcome in pleading a successful claim, Jones failed to allege any facts to support her original claim regarding the constitutionality of the no-contact order and then traveled further off course by filing two amended complaints raising unrelated issues to the First Amendment violation that the Court initially granted her permission to file.

Given that no contact orders, by definition, infringe on first amendment rights, courts must assure that those rights are "strictly limited only to that which is determined necessary after sufficient findings have been established in the record." *Gates v. Cook*, 234 F.3d 221, 227 (5th Cir. 2000). No contact orders require "specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 101, 68 L. Ed. 2d 693, 101 S. Ct. 2193 (1981). The lack of facts presented in this case prevents the Court from concluding that the claims are facially plausible because the Court cannot "draw the reasonable inference that the defendant is liable for the misconduct alleged," *Iqbal*, 556 U.S. at 678, and cannot find that her claims are a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" *Twombly*, 550 U.S. at 555, 557, 127 S. Ct. at 1965, 1966 (second brackets in original).

Jones' stated claims are conclusory allegations, at best, lacking the necessary factual support to sustain a § 1983 action. Additionally, based on a review of the Court's prior filings of Plaintiff Jones, specifically those of *Jones v.*

19

*Albright*, CA 09-0600-WS-C, 2010 U.S. Dist. LEXIS 47260, *3-5 (S.D. Ala. April 15, 2010), it appears that the no contact order issued by the Mobile County Circuit Court following Jones' jury trial and conviction of stalking is "narrowly drawn" and necessary given the weight of evidence found by the court.  *Gates*, 234 F.3d at 227.  Thus, with no facts provided by Plaintiff and with her litigation history currently before the Court, Plaintiff Jones has failed to provide the needed elements to establish a successful claim, and the Court is barred from reviewing the merits of the action.

### IV.     Conclusion.

Based upon the foregoing reasons, it is recommended that this action be dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) as the Court lacks jurisdiction over the complaint.[7]

### NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b); S.D. Ala. L.R. 72.4. The parties should note that *under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the*

---

[7]     A dismissal based on the *Rooker-Feldman* doctrine is a dismissal for lack of subject matter jurisdiction, and "[a] dismissal for lack of subject matter jurisdiction is not a judgment on the merits and is entered without prejudice." *Stalley v. Orlando Reg'l Healthcare Sys.*, 524 F.3d 1229, 1232 (11th Cir. 2008); *see also Boda v. United States*, 698 F.2d 1174, 1177 n.4 (11th Cir. 1983) (dismissal on subject matter jurisdiction grounds "is without prejudice").

*district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1.* In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

     **DONE** this 30th day of June, 2015.


                      s/WIILIAM E. CASSADY
                      UNITED STATES MAGISTRATE JUDGE